UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KARYN D. STANLEY,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        CASE NO.: 6:20-cv-629-Orl-78GJK
                                     )
CITY OF SANFORD, FLORIDA,            )
                                     )
        Defendant.                   )
_____)

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (DOC. 14)**

Through undersigned counsel, Plaintiff KARYN D. STANLEY, hereby responds and

opposes the Motion to Dismiss (Doc. 14) filed by the Defendant, CITY OF SANFORD, as follows:

<u>UNDERLYING FACTS AND DESCRIPTION OF THE CLAIMS</u>

Plaintiff was employed by Defendant as a Firefighter; she rose to the rank of Lieutenant.

(Doc. 1, ¶¶ 4, 13-15) Unfortunately, through no fault of her own, Plaintiff became physically

disabled by a medical condition and was no longer able to perform the high physical standards

required for Firefighters. (¶ 16) Therefore, she was forced to retire from her Firefighter career after

approximately twenty (20) years, having no choice because of her physical medical condition,

though she had fully intended and planned to remain in the Defendant's employment for at least

another 5 years and attain "normal" retirement. (¶¶ 4, 16)

Plaintiff's Complaint (Doc. 1) alleges that she is being subjected to discriminatory treatment

and suffering a discriminatory impact from the policy of the City of Sanford that pays for its

disability retirees' health insurance benefits for only two years following their retirement, while

paying for its "regular" retirees' health insurance benefits until they reach the age of 65.  The City

previously had a policy that provided both its "regular" retirees and its disability retirees with a full subsidy for payment of their health insurance plan until age 65.  (¶19) This is a stand-alone fringe benefit, not part of any pension plan and not subject to any contributions made based on years of service. (¶23) When the City decided to change that policy, it did not provide or discuss any actuarial or other basis for the change. (¶¶20, 32). Moreover, the City's own legal counsel advised the City that the policy change contains an illegal difference in treatment of retiree types, citing the Florida statute that prohibits such a distinction in the provision of this stand-alone fringe benefit.[1] (¶22)   City's discriminatory policy deprives Plaintiff of the equal benefit of receiving a health insurance subsidy until she reaches age 65 and will result in economic harm to her and denial of equal access to health benefits as that of her non-disabled "regular" retiree peers. (¶ 26)

Plaintiff's Complaint asserts the following claims:

Count I -  Section 504, Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act") for the City's discrimination in the provision of health insurance benefits to its disability retirees including Plaintiff, with no legitimate actuarial basis for the disability-related distinction;

Count II -  The Americans with Disabilities Act (ADA) as amended by the ADA Amendments Act of 2008 ("ADAAA"), Section 42 U.S.C.A. § 12101 *et seq.*, for the City's discriminatory failure to provide equal access for disabled individuals including Plaintiff to its group health insurance plan;

---

[1]/Significantly, this fringe benefit is created by a stand-alone City policy, not by an insurance policy, not by any pension plan, and not by any kind of plan, fund, or benefit program that employees contribute funds to accrue over years of service. Employees who have more years of service than Plaintiff have not paid anything into a fund for this fringe benefit, as no City employees pay anything into any fund for this fringe benefit. Although this particular fringe benefit is governed by Florida Statute §112.0802(1) and is cited in the Complaint, Defendant completely fails to address this key statute.

Count III - the Florida Civil Rights Act ("FCRA"), § 760.01, *et seq.*, Florida Statutes, for the City's discriminatory failure to provide equal access for Plaintiff, a disabled individual, to its group health insurance plan;

Count IV - The Declaratory Judgment Act, 28 U.S.C. §2201, seeking declaratory relief for the Defendant's *ultra vires* violation of state law in the provision of health benefits to retirees;

Count V - 42 U.S.C. §1983 ("Section 1983") for violations of federal anti-discrimination laws; and

Count VI - Equal Protection Claim under Section 1983 - a facial discrimination claim, alleging no legitimate governmental reason exists for having an insurance continuation policy that discriminates against its disabled retirees.

## OVERVIEW OF DEFENDANT'S MOTION TO DISMISS

In its Motion to Dismiss, Defendant makes the following arguments, all of which are unsupported by the law and should be rejected:

(1) That Counts I, II and III should be dismissed because the Plaintiff is not a qualified individual under the ADA because "once she was granted her disability retirement . . . she could no longer perform the essential functions of her employment as a firefighter.  As such, she is plainly not a qualified individual with a disability, and, as such, has failed to state a cause of action as a matter of law."  (Doc. 14, p. 4).

(2) That Counts I, II and II should be dismissed because the Plaintiff failed to plead an adverse employment action based on disability, claiming that Plaintiff's allegations of a change in the benefits provided to disability retirees was insufficient. (Doc. 14, p. 5).

(3) Citing no authority whatsoever, that Count IV for Declaratory Relief should be dismissed

on the basis that "Plaintiff has not in any way set firth *(sic)* the elements if *(sic)* this claim, with the requisite facts, not *(sic)* has Plaintiff otherwise established entitlement to declaratory relief."  (Doc. 14, p. 6);

(4) That Plaintiff's Count V for Section 1983 violation should be dismissed because Plaintiff has failed to plead a violation of the ADA or the Rehabilitation Act or any constitutional violation. (Doc. 14, pp. 6-7); and

(5) That Plaintiff's Count VI  Equal Protection claim under Section 1983 should be dismissed because she was not treated differently due to her disability but because of her number of years of service. (Doc. 14, p. 7)

## ARGUMENT: MOTION TO DISMISS SHOULD BE DENIED

To survive a Rule 12(b)(6) motion to dismiss, a complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The issue is whether the plaintiff has alleged enough information to proceed to discovery—not whether the plaintiff will win her case. *Id.* at 678-79.

## A:  PLAINTIFF IS A QUALIFIED INDIVIDUAL WITH A DISABILITY

Defendant argues that the Court should dismiss Counts I, II and III in the Complaint - Plaintiff's discrimination claims under the Rehabilitation Act, the ADA and the FCRA - on the basis that Plaintiff is not a Qualified Individual, citing only *Bass v. City of Orlando,* 57 F.Supp. 2d 1318 (M.D. Fla. 1999) *aff'd* 203 F.3d 841(11th Cir. 1999) (*per curiam*).  Defendant inexplicably fails to

mention that the holding in the Eleventh Circuit case underpinning the *Bass* decision, *Gonzales v. Garner Food Svcs., Inc.,* 89 F.3d 1523 (11ᵗʰ Cir. 1996) was expressly overturned in *Johnson v. K Mart Corporation*, 273 F.3d 1035, 1037 (11ᵗʰ Cir. 2001):

> In Part I, we consider the question whether a former employee — as against a current employee or an applicant — is eligible to file suit under 42 U.S.C. § 12112(a), which makes it unlawful to "discriminate [with respect to employment] against a qualified individual with a disability because of the disability of such individual...." This court has previously — over strong dissent — answered the question in the negative. *See Gonzales v. Garner Food Services, Inc.*, 89 F.3d 1523 (11th Cir.1996), *reh'g denied*, 104 F.3d 373 (11th Cir.1996), *cert. denied*, 520 U.S. 1229, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997). Herein we revisit this question in light of the principles set forth in a subsequent Supreme Court opinion, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), which addressed the same question as it arose under a cognate statute, Title VII of the Civil Rights Act of 1964, answering the question in the affirmative. In our judgment, *Robinson* mandates the conclusion that *Gonzales* is no longer good law and must be deemed overruled.

Moreover, in footnote 6, the majority rejected its *per curiam* decision in *Bass v. Orlando* as having any weight since the Court failed to consider the effect of the Supreme Court's intervening decision in *Robinson*.  Defendant in the instant case failed to point out to the Court that *Bass v. Orlando* was also implicitly overturned by *Johnson v. K-Mart*.

However, the Eleventh Circuit granted *en banc* review of *Johnson v. K Mart Corporation* and vacated the opinion on December 19, 2001, per the Eleventh Circuit Rule 35-10 ("the effect of granting a rehearing en banc is to vacate the panel opinion and the corresponding judgment.")  When the K Mart Corporation went into bankruptcy, all proceedings were stayed, and after several years, the case was settled and the appeal was dismissed with prejudice on October 21, 2004. (Copy of the Eleventh Circuit docket is attached as Exhibit 1).

The effect of the proceedings in *Johnson v. K-Mart* is that there is no good precedent within the Eleventh Circuit on this issue as it has not since then addressed the impact of the Supreme Court's intervening decision in *Robinson* on the holding in *Gonzales*, and the case upon which

Defendant relies, *Bass v. Orlando* is not dispositive of the issue.  Instead, one must look at the reasoning of the panel in *Johnson v. K-Mart* and other circuits to apply it to decide the issue.

An intervening decision of the Supreme Court subjects a prior decision of this Court to reconsideration. *See Chambers v. Thompson*, 150 F.3d 1324, 1326 (11th Cir.1998) ("We are bound to follow a prior panel or *en banc* holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent *en banc* or Supreme Court decision.").  The panel in *Johnson v K-Mart* found there was a material inconsistency between its prior panel decision in *Gonzales* and the Supreme Court's ruling in *Robinson,* as explained by Judge Barkett in her concurring decision:

> *Robinson* explicitly invalidates several of the propositions that informed the *Gonzales* Court's conclusion that Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq.*, only covers former employees. In both *Gonzales* and *Robinson*, the basic question presented was whether the term "employee" in an employment discrimination statute only refers to current employees or includes former employees. In both cases, the employer argued that the plain definition of the term "employee" in an employment discrimination statute unambiguously refers to current employees. *Robinson*, 519 U.S. at 339, 117 S.Ct. 843; *Gonzales*, 89 F.3d at 1526. The Court in *Gonzales* agreed, holding that the term "employee" in Title I was plain and unambiguous, and only referred to current employees. *Gonzales*, 89 F.3d at 1526 (interpreting 42 U.S.C. § 12111(4)). However, the Supreme Court in *Robinson* rejected the notion that the term "employee," standing alone, is unambiguous, explaining that the term "employee" "lacks any temporal qualifier and is consistent with either current or past employment." *Robinson*, 519 U.S. at 342, 117 S.Ct. 843 (discussing 42 U.S.C. § 2000e-3(a)). The Supreme Court indicated that courts should not draw unnecessary meaning from the fact that the term "employee" is generally defined in an employment discrimination statute as a "person employed by an employer," explaining that the word "employed" in this context "is not ... limited in its possible meanings, and could just as easily be read to mean `was employed'" by an employer. *Id.* at 342, 117 S.Ct. 843.

*Johnson v. K-Mart,* 273 F.3d at 1060-61.

It is well-established that it is unlawful for an employer to discriminate on the basis of disability in the provision of fringe benefits available by virtue of employment.   29 C.F.R. § 1630.4(f)).  Since the ADA protects in the provision of benefits, "qualified individual with a

disability" must be interpreted to give effect to the rights that the ADA has created. It is unlikely that Congress intended to create a "bait-and-switch," where an individual is only covered by the statute until the moment when she actually needs its protection. The more reasonable interpretation of the statute is that a former employee who is denied access to fringe benefits due to disability-based discrimination can bring suit to challenge such discrimination.  Moreover, Plaintiff has alleged that she was denied equal access to insurance benefits on the basis of her disability.  In *Anderson v. Gus Mayer,* 924 F.Supp. 763 (E.D. Tex. 1996), the court extensively reviewed the ADA legislative history, interpretations, scholarly debate and case law to determine that an employer has a duty under the ADA to provide equal access to insurance coverage  for its disabled employees.

The panel in *Johnson v K-Mart* analyzed the issue of the standing of a former employee to bring an ADA suit about benefits by applying the logic of the Supreme Court in *Robinson*, a Title VII case.  The *Johnson* court noted that *Gonzales* (ruling prior to *Robinson*) had specifically relied upon Title VII for the definition of "employer" under the ADA, ruling that it had a "plain and ordinary meaning" and was "unambiguous" and plainly excluded former employees.  However, the Supreme Court's analysis in *Robinson* expressly found ambiguous the words "applicant or employee" and held they do not exclude former employees because of "the importance of temporal qualifiers."  *Johnson, id.* at 1045.

The panel in *Johnson* also relied upon two cases from other circuits, both of which applied *Robinson* to determine standing for prior employees in ADA benefits claims.  In those cases, the Second and Third Circuits held that because the ADA expressly extends to provision of fringe benefits, some of which typically would be received by people who are too disabled to continue working, the temporal scope of the term "qualified individual with a disability" must be broad. *Ford*

*v. Schering-Plough Corp.*, 145 F.3d 601, 605-07 (3d Cir.1998); and *Castellano v. City of New York*, 142 F.3d 58, 67 (2d Cir.1998).[2]/

In *Castellano,* the Second Circuit looked first to the statutory definition of the term "qualified individual with a disability," and concluded that the absence of a temporal modifier rendered that definition ambiguous. *See* 142 F.3d at 67 ("[Section 12111(8)] fails to specify when a potential plaintiff must have been a 'qualified individual with a disability' in the context of a claim that the provision of retirement or fringe benefits is discriminatory."). The court then sought the meaning of the term "qualified individual" in the "broader context" and "primary purpose" of the ADA, noting that excluding former employees from the definition of "qualified individual[s] with a disability" would undermine the purpose of other provisions of Title I of the ADA, particularly the statute's prohibition of discrimination as to fringe benefits, embodied in 42 U.S.C. § 12112(b) and 29 C.F.R. § 1630.4. *See id.* The court observed that "[m]any fringe benefits are paid out to those who no longer work and who are no longer able to work, and some fringe benefits are paid out to individuals precisely because they can no longer work." *Id.* at 68.

The *Castellano* court's reasoning can be restated along the following lines: since "employees" generally are not entitled to receive disability-related fringe benefits unless they are unable to work, they frequently do not need to or seek to enforce the ADA's prohibition of discrimination as to those fringe benefits until they become former employees because that is when those benefits are triggered. Excluding former employees from the category of "qualified individuals" entitled to seek relief under the ADA would therefore effectively nullify prohibitions

--------

[2]/ Other circuits have held that former employees who cannot perform the essential functions of their jobs are not "qualified individuals" capable of suing under Title I of the ADA, even for fringe benefits, but only one of these cases was issued subsequent to *Robinson*. *See Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1108 (9th Cir. 2000) (rejecting analysis of the Second and Third Circuit cases post-*Robinson*). The Eleventh Circuit panel in *Johnson v. K-Mart* expressly rejected the Ninth Circuit's analysis in *Weyer*. *Id.* 273 F.3d at 1047.

against discrimination in the provision of disability benefits by allowing employers to deny the benefits to a totally disabled employee at the only time the employee could claim them. Thus, the *Castellano* court recognized the "illogic inherent" in a statutory scheme interpreted to create a right to be free from discrimination in the post-employment provision of fringe benefits without also providing a corresponding mechanism by which that right could be enforced. *See id.* at 69. The court concluded that, when Congress limited the protection of the ADA to "qualified individual[s]," "Congress was concerned [only] that employers not be forced to hire, promote, or retain unqualified, disabled employees." *Id.* at 68.

Consequently, "[w]here the alleged discrimination relates to the provision of post-employment benefits, rather than to hiring, promotion, or firing, Congress's expressed concern about qualifications is no longer implicated." *Id.* In other words, because a person entitled to long-term disability benefits by definition can no longer perform the essential functions of his or her job, the concern that such an employee be "qualified" to do that job is no longer of consequence.

Similarly, the Third Circuit in *Ford* recognized a disjunction between the ADA's definition of "qualified individual with a disability" and the rights conferred by the ADA, noting that former employees must be eligible to bring Title I claims in order to effectuate Title I's prohibition against discrimination in terms of fringe benefits. *See, Ford*, 145 F.3d at 605-06.

It would frustrate the purpose of the ADA to deny a disabled former employee statutory standing to bring a claim alleging discrimination in the provision of fringe benefits.  If this Court followed the path urged by Defendant City of Sanford, then no totally disabled person could ever challenge any discriminatory distribution of fringe benefits, even though the ADA prohibits such discrimination.  Defendant's position is contradictory to the purpose and coverage of the ADA, creates a false, temporal "gotcha" for employees, is inconsistent with the latest published opinion

from the Eleventh Circuit on this point, and is also inconsistent with the U.S. Supreme Court's decision in *Robinson*. The Court should deny the Defendant's Motion to Dismiss the discrimination claims on the basis of her not being a qualified individual.

### B. PLAINTIFF HAS SUFFICIENTLY ALLEGED DISCRIMINATION IN BENEFITS

Defendant next argues Plaintiff's discrimination claims should be dismissed because the Plaintiff should be compared to people who simply chose to leave before completing 25 years of service. (Doc. 14, pp. 5-6).

### 1. Defendant Applies Incorrect Analysis for Facially Discriminatory Fringe Benefit

Defendant has a stand-alone fringe benefit stated in the City's policies for all personnel that Plaintiff contends is facially discriminatory. This policy is *not* part of the pension plan. This policy is *not* written into the health insurance plan. This policy is instead a *personnel policy* that the City chose to implement and chose to amend in a manner that clearly violates the ADA. The City policy provides City-Paid health insurance to all "normal" retirees, and also provides City-Paid health insurance to all "disabled" retirees. However, the policy arbitrarily, unfairly and illegally cuts off all City payments for the health insurance for the "disabled" employees at 24 months post-retirement. Meanwhile, "normal" retirees, get to stay on City-Paid health insurance to age 65. Charging Party rightly asserts this stand-alone City personnel policy violates the ADA.

EEOC Enforcement Guidance 915.002 (06-08-1993) lays out the step-by-step analysis necessary to determine if a health insurance plan has an impermissible disability-based distinction:

> .... When confronted with a charge alleging that a health insurance plan distinction is a disability-based distinction that violates the ADA, the investigator should initially determine whether the challenged insurance term or provision is, in fact, a disability-based distinction. To do this, the investigator should determine whether: 1) the insurance term, provision, or condition singles out a particular disability, discrete group of disabilities, or disability in general; .... .... [I]f the challenged insurance term or provision is found to be a disability-based distinction, the

investigator should determine whether the respondent can justify the disability-based distinction by satisfying the requirements of section 501(c) of the ADA.

Similarly, EEOC Directives Transmittal Number 915.003 (October 3, 2000) Chapter 3 of the EEOC

Compliance Manual – ADA Issues identifies the threshold question as follows:

> Thus, if the charge challenges discrimination in the terms of provisions of a benefit plan, the relevant questions are the following:
>
> • Has the employer provided equal benefits to employees with disabilities and to other employees covered by the plan?

In this case, Defendant's written policy expressly on its face proves a disability-based distinction as compared to non-disabled employees who are covered by the City-Paid insurance benefit. The policy expressly states that while non-disabled retirees get their health insurance paid for by the City of Sanford until age 65 or Medicare eligibility, disabled retirees are cut-off from the payment after only two years or Medicare eligibility. This is on its face a disability-based distinction. At this stage of this case, Plaintiff has done all that is required to state a claim.  Defendant has yet to answer and in its Motion to Dismiss, Defendant did not assert anything to overcome the disability-based distinction and Plaintiff has alleged a proper claim that Defendant violated the ADA.

## 2.  Even If Comparator Analysis Applied, Defendant Applies Wrong Comparator

Moreover, contrary to Defendant's repeated attempt to have the Court compare its disability retirees to people who simply chose to leave before 25 years of service, the EEOC Compliance Manual quoted above requires comparison of the disabled employees to the non-disabled employees who are "*covered by the plan.*" This makes the relevant comparators the regular retirees who *do* get the City-Paid health insurance. Like the disabled employees, they get the City-Paid health insurance, but instead of losing that payment two years after retirement, the non-disabled employees get that benefit to age 65, which is many years longer than the non-disabled retirees. Defendant's argument makes an irrelevant comparison to those who do not qualify for the City-Paid health insurance at

all. And as shown more fully below, that other group urged by Defendant is not even part of the applicable Florida Statute for this fringe benefit.

According to Florida law, only disability retirees and those who have completed 25 years of service ("regular" or "normal" retirees) collect these benefits upon leaving employment and therefore the entire "third category" of people used as a red herring by Defendant is irrelevant by Florida law. And since the ADA requires a plan to comply with state law in order to be "bona fide", the Defendant's argument for a "third category" of retirees in this analysis is a mere red herring, irrelevant and fails.

Moreover, until 2003, the City of Sanford's policy was that it would equally pay for health insurance for its employees who retired after 25 years of service <u>and</u> its employees who retired on account of disability, paying each category until the employee reached the age of 65.   In 2003, for reasons it has never articulated, Defendant City of Sanford changed that policy, limiting the disability retirees to getting only two years of health insurance subsidy.  (Doc. 1, ¶¶19-20) That change only affected the disability retirees; not the persons who left the employ before 25 years of service since they were never provided a benefit, nor did the Florida Statute require that they were. The history of that policy is additional evidence that the correct comparators are the non-disabled employees who retired and do get the City-Paid health insurance until age 65.  The change in the policy meant that the City went from an ADA-compliant old personnel policy to a non-compliant, ADA-violating new personnel policy.

If an employer has made a disability-based distinction in a benefit plan [which Defendant does], it will be liable for a violation of the ADA unless it can show that the distinction is justified under both prongs of Section 501(c) of the ADA [which Defendant has not]. Defendant can only justify a discrimination-based distinction under Section 501(c) of the ADA by proving both prongs:

(1) that it is a *bona fide* plan and (2) that is based on sound actuarial basis so it is not a subterfuge for discrimination.  A bona fide plan can be shown if it complies with state law.

More specifically, the City's personnel policy is not a *bona fide* plan because it violates state law.  Fla. Stat. §112.0801 authorizes cities like Defendant to pay for retirees' health insurance premiums and keep them on the City's health insurance plan in retirement. Section 112.0801(2) expressly defines "retiree" to include any officer or employee who "is placed on disability retirement and who begins receiving retirement benefits immediately after retirement from employment." Further, Fla. Stat. § 112.0801(1) does not allow for distinction between "normal" and "disabled" retirees. Instead, it authorizes the City-Paid health insurance coverage for all "retirees." Since the statutory definition of "retirees" includes those who retire after the "normal" number of years and those who retire due to "disability," those two groups are to be treated the same under §112.0801, Fla. Stat.  By violating Section 112.0801, the Defendant's personnel policy for City-Paid health insurance for retirees is not "bona fide" under Section 501(c) of the ADA, and therefore violates the ADA as referenced above.

Importantly, Fla. Stat. §112.0801 also excludes[3]/ the "red herring" group that Defendant improperly tries to introduce into this case; in other words, those who simply *chose* to retire early

---

[3]/Since the 2007 amendment to Section 112.0801, adding the definition of "retiree" in subsection 2, the only retirees eligible for the City-Paid health insurance under this City-written policy are the disabled retirees and "normal" retirees. The third group (those who chose to retire early) were defined out of the Florida Statute with the 2007 amendment.

So Defendant's entire argument fails because Fla. Stat. §112.0801(2) that authorizes the City-Paid health insurance benefit to City retirees itself defines "retirees" only to include those with "normal" retirement (here it is 25 years of service) and disabled retirees (of which Charging Party is one and Defendant admits that).

Further, Florida Attorney General Opinion 2008-05 (issued after the 2007 amendment) makes clear that **mere "early" retirees who are not disability retirees are not entitled to the statutory coverage under Section 112.0801**, Florida Statutes. Therefore, this fictitious, theoretical "third group" of retirees upon which Defendant rests its entire argument in its entire position statement, was written out of the Florida law in 2007 and now does not exist. The Florida Statute itself renders the mere "early" retirees completely irrelevant.

without meeting either the years of service requirement or the disability requirement are not even "retirees" under the applicable Florida statute.

As a result, it is clear that Defendant pins its entire attack on the validity of Plaintiff's claims on a fallacy: there are not "three groups" relevant to this analysis and Defendant wrongly claims Charging Party is to be compared to those who simply "choose" to retire early. Moreover, in 2010, a memo was sent from Defendant's City Attorney to the City's HR Director informing the Defendant that "this statute does not allow an employer to distinguish between the individuals' retirement status." (Doc. 1, ¶22) Despite this information from the City Attorney, Defendant has continued to treat "disabled retirees" differently than "normal retirees" by providing "normal retirees" City-Paid health insurance until age 65, while providing "disabled retirees" City-Paid health insurance for only two years. This violates the ADA.

Not only did the City's policy fail to meet the first prong of ADA 501(c) because it violates state law but its also fails to meet the second prong of ADA §501(c) because it has failed to show any sound actuarial or other basis for this facially discriminatory policy and has not shown that it is not a mere subterfuge for discrimination. "[A]n insurance plan is a subterfuge under the ADA if it is 'based on speculation, and not on sound actuarial principles, actual or reasonable anticipated experience, or bona fide risk classification.'" *Parker v. Metropolitan Life Ins. Co.*, 121 F. 3d 1006, 1009 (6th Cir. 1997).

The case cited by Defendant, *Castellano v. City of New York*, 142 F.3d 58, 67 (2d Cir.1998), is inapposite to the instant case on the comparator issue.[4] Unlike the instant case, *Castellano* involved a complex pension scheme that included funds that were pooled from multiple pension

---

[4]/Defendant fails to note that the *Castellano* decision held that the disabled retirees were "qualified individuals" with standing to sue under Title I of the ADA, let along try to distinguish that holding with *Bass v. City of Orlando.*

funds and accrued over time, and thus it met both prongs of 501(c) in that it did not violate state law and it was based on an actuarial sound basis, unlike the instant policy. Remember, Defendant's personnel policy providing this stipend is not based on any kind of fund accrual over time and therefore its facial discrimination against the disabled cannot be overcome with a legal justification. Further, as shown above, Florida Stat. § 112.0801 renders Defendant's asserted comparator a mere red herring, foreclosed by Florida law.

Plaintiff has adequately pled an adverse action by stating that she, a disability retiree, was treated differently in the provision of the health insurance subsidy than regular retirees by the change in the policy that previously paid both regular retirees and disability retirees health subsidies until the age of 65. Plaintiff requests the Court deny dismissal on this basis as she has provided sufficient factual detail to proceed on her discrimination claims.

### C.  PLAINTIFF HAS ADEQUATELY PLED HER DECLARATORY RELIEF CLAIM

Citing no authority whatsoever, Defendant has moved for dismissal of Count IV for Declaratory Relief on the basis that "Plaintiff has not in any way set firth *(sic)* the elements if *(sic)* this claim, with the requisite facts, not *(sic)* has Plaintiff otherwise established entitlement to declaratory relief." (Doc. 14, p. 6). Without any specificity or case law cited by Defendant, it is a bit difficult to fathom how to shape an argument to this nebulous request.

Under the federal Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201; see also Fed. R. Civ. P. 57 ("[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate").

An element for a declaratory judgment action is "the existence of an `actual controversy' between the parties, a term which holds a similar meaning as the cases and controversies

requirement of Article III to the United States Constitution." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1302 (M.D. Fla. 2015).

The claim seeks to have the Court rule that the Defendant City of Sanford acted *ultra vires* and exceeded its statutory authority under Florida Statute §112.0801(1) when it reduced the duration of the City Health Insurance Subsidy from until age 65 to only two years following retirement of its disabled retirees only, and declare void the policy section which limits the City's Health Insurance Subsidy to its disabled retirees to allow them the full benefits.  (Doc. 1, ¶52).

Plaintiff has plead an actual controversy: she wants the City of Sanford to provide her with a health insurance subsidy until she is 65 years old and the City won't. This is not a hypothetical disagreement. Because there is a fight over whether City of Sanford exceeded its authority in limiting its health insurance subsidy policy and whether the City of Sanford must pay Plaintiff's health insurance subsidy until she is 65 years old, the Complaint alleges an actual controversy to survive dismissal at this stage.

The Court should deny the City of Sanford's motion to dismiss on Count IV, brought under the federal Declaratory Relief Act.

### D.  PLAINTIFF HAS STATED A SECTION 1983 DISCRIMINATION CLAIM

Defendant has moved for dismissal of Plaintiff's Count V for Section 1983 violation, claiming that Plaintiff has failed to plead a violation of the ADA or the Rehabilitation Act or any constitutional violation. (Doc. 14, pp. 6-7).  Defendant's argument regarding failure to plead the discrimination claims is a re-assertion of its previous arguments that Plaintiff failed to plead a violation of the ADA or the Rehabilitation Act.   As argued above, Plaintiff contends that she has properly pled violations of both the ADA and the Rehabilitation Act: she asserted that the City of Sanford's City Commission, the official policymaker for the Defendant, changed its health insurance

subsidy in a manner that denied its disabled retirees with the same benefit as its regular retirees, in violation of the ADA and the Rehabilitation Act. (Doc. 1, ¶¶ 54-57).

Defendant also argues that Plaintiff cannot base her Section 1983 claim on a violation of the discrimination laws; that she must identify a specific constitutional right allegedly infringed, citing *Graham v. Connor*, 490 U.S. 386, 394,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).  However, that is a police misconduct case and not applicable to the instant matter.

Defendant also cites *Wright v. City of Tampa*, 998 F. Supp. 1398 (M.D. Fla. 1998) for the proposition that "a Section 1983 claim is not viable where the only deprivation is the employee's rights created by the Rehabilitation Act and the ADA." (Doc. 14, p. 7).  However this is a narrow mis-reading of the case.  In *Wright,* the Court allowed the plaintiff's Section 1983 claims to go forward on a motion for summary judgment, stating "Plaintiff is not precluded from bringing a §1983 claim concurrent with her Title VII and ADA claims as long as the §1983 claim is based on a distinct violation of a constitutional right," finding that the allegations regarding the discriminatory actions and policies by the municipality's official policymaker rendered an independent basis for a Section 1983 claim.  *Id.,* 998 F.Supp. at 1404.  *See also*, *Kruger v. Jenne*, 164 F. Supp. 2d 1330, 1339 (S.D. Fla. 2000) (rejecting a motion to dismiss, held that a litigant may simultaneously maintain causes of action under § 1983 and the ADA, "as long as the § 1983 claims are based on independent causes of action, i.e. claims based on violation of federally protected rights, whether constitutional or statutory.")

Plaintiff has sufficiently alleged that she has an independent basis for a Section 1983 claim for the violations of the ADA and the Rehabilitation Act, and the Defendant's Motion to Dismiss on this claim should be denied.

## E.  PLAINTIFF HAS STATED AN EQUAL PROTECTION CLAIM

Defendant lastly argues that Plaintiff's Count VI Equal Protection claim under Section 1983 should be dismissed because she was not treated differently due to her disability but because of her number of years of service. (Doc. 14,  p. 7).  Again, this is a gross mis-characterization of the facts stated in the Complaint.   Plaintiff has alleged that a policy issued by the City of Sanford intentionally and facially discriminated against its disabled retirees by reducing their benefits to two years instead of remaining to age 65 as previously provided and as continued to be provided to the regular retirees and that such policy violated the Plaintiff's statutory rights to be free from discrimination on account of disability. (Doc. 1, ¶¶ 59-61)

Here, Defendant oddly cited *Glenn v. Brumby*, 663 F.3d 1312, 1315 (11th Cir. 2011) for the proposition that the Equal Protection Clause provides that Defendant must "treat all persons similarly situated alike or, conversely, [must] avoid all classifications that are 'arbitrary or irrational' and those that reflect a 'bare desire to harm a politically unpopular group.'" (Doc. 14, p. 7). Plaintiff's claim meets that standard: Plaintiff asserts that, contrary to Defendant's argument, the Equal Protection Clause protects her in this case because the policy at issue did indeed distinguish on the basis of disability, not years of service, as argued by City.  Until the City of Sanford changed it official policy in 2003, it had provided its disability retirees with equal benefits of its regular retirees - regardless of the amount of time in service by the disabled retirees. In other words, the regular retirees and the disability retirees were similarly situated.   When the City implemented the policy changing the benefits, it did so without any stated basis and its impact was to treat its disabled retirees differently from its regular retirees.   Contrary to the City's assertions, how it treated other persons who retired early from the City is of no import - it never provided the health continuation benefit to those persons so they were never similarly situated to the disabled retirees.

In *Wright*, the court held that "A claim for a violation of federally protected rights (under color of state law), whether statutory or constitutional, is actionable under §1983 . . . . Moreover, 'an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.' . . . In addition, a municipality or a local government may be liable under Section 1983 when a plaintiff can show that the right violated stemmed from a custom or policy prescribed by that governmental entity." *Id.,* 998 F.3d at 1404. *See also, Ali v. City of Clearwater*, 915 F.Supp. 1231, 1235 (M D. Fla.1996) (allowing Section 1983 claim based on Rehabilitation Act to survive summary judgement where Plaintiff could show evidence of discrimination on the basis of handicap).

Plaintiff has alleged in the Equal Protection claim that the City of Sanford's health insurance continuation policy classified its disabled retirees as different from it other retirees, that there was no rational relationship between the classification and any legitimate governmental goal, and that the city has no legitimate governmental reason for having an insurance continuation policy that discriminates against its disabled retirees. (Doc. 1, ¶¶ 59-61)   When a state actor, such as a municipality, classifies persons in any fashion, such conduct potentially invokes the Equal Protection Clause of the Fourteenth Amendment. However, under Equal Protection jurisprudence, a state actor may treat persons who are not members of a suspect or quasi-suspect class differently if it has a legitimate governmental purpose for doing so and seeks to achieve that purpose through rationally related means. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 442, 105 S.Ct. 3249, 3255-56, 87 L.Ed.2d 313 (1985). Although the Supreme Court does not consider handicapped persons to be a suspect or quasi-suspect class, *id.* at 443, 446, 105 S.Ct. at 3256, 3257-58, however, a state actor "may not rely on a classification whose relationship to an asserted goal is so attenuated

as to render the distinction arbitrary or irrational" even if its classification is non-suspect. *Id.* at 446, 105 S.Ct. at 3258.

Since the Plaintiff has alleged that the City of Sanford has no legitimate governmental basis for the policy that classifies its disabled retirees differently from its regular retirees, Plaintiff has sufficiently established a claim of Equal Protection to survive Defendant's Motion to Dismiss on that claim.

## **CONCLUSION**

Defendant's Motion to Dismiss should be denied on all of the grounds stated.

Respectfully Submitted,

*/s/Martha A. Chapman*
Martha A. Chapman
Florida Bar No. 4464
MARTHA A. CHAPMAN, P.A.
Post Office Box 536924
Orlando, Florida 32853
407-896-4835 (office)
407-574-7912 (fax)

-and-

*/s/Patricia R. Sigman*
Patricia R. Sigman
Florida Bar No. 961957
SIGMAN & SIGMAN, P.A.
211 Maitland Avenue
Altamonte Springs, FL 32701
407-332-1200 (office)
407-332-1210 (fax)
ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on this date, June 10, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/Martha A. Chapman*
Martha A. Chapman
Florida Bar No. 4464