UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KARYN D. STANLEY,                                CASE NO.:  6:20-cv-00629-WWB-GJK

      Plaintiff,

vs.

CITY OF SANFORD, FLORIDA,

      Defendant.

_____/

DEFENDANT, CITY OF SANFORD, FLORIDA'S, MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Defendant, City of Sanford, Florida, by and through its undersigned counsel and pursuant to FED. R. CIV. P. 56(a), Local Rules §§ 1.08(a); 3.01(a), and this Court's Order on Motions for Summary Judgment [ECF 23 § II.H.1], files this, Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law and as grounds therefore, says:

1.     On April 11, 2020, Plaintiff filed a Complaint and Demand for Jury Trial in the United States District Court, Middle District of Florida. [ECF 1 ("the Complaint")].

2.     The Complaint was brought in  six (6) separate counts alleging: violation of the Rehabilitation Act, codified at 29 U.S.C. § 794(a) (Count I); violation of the Americans with Disabilities Act, codified at 42 U.S.C. §§ 12101 –

12117 (Count II); violation of the Florida Civil Rights Act of 1992, codified at FLA. STAT. §§ 760.01 – 760.11 (Count III); entitlement to declaratory relief, power conferred by 28 U.S.C. §§ 2201 – 2202 (Count IV); relief pursuant to 42 U.S.C. § 1983 (Count V); and violation of the United States Constitution's Equal Protection Clause, U.S. CONST. amend. XIV § 1, brought pursuant to 42 U.S.C. § 1983 (Count VI).

3.      On March 1, 2021, this Court entered an order dismissing Counts I – III with prejudice and Count V without prejudice. [ECF 27, p. 10]. Plaintiff did not replead Count V. Therefore, Plaintiff's sole remaining claims for relief include Count IV alleging entitlement to declaratory relief and Count VI alleging violation of the Equal Protection Clause. Defendant is entitled to judgment with respect to both theories of recovery.

4.      The pleadings, deposition transcripts, and relevant exhibits, demonstrate that there is no genuine dispute as to any material fact and the Defendant is entitled to judgment as a matter of law.

5.      The Complaint fails to state a cause of action for which declaratory relief may be granted on the grounds that Defendant did not violate the provisions of FLA. STAT. § 112.0801 and therefore plaintiff is not entitled to the declaration sought.

6.     The Complaint fails to state a cause of action for which relief may be granted under a theory of equal protection on the grounds that the classification of which Plaintiff complains is rationally related to a legitimate government interest.

7.     Additional facts and citations to authority in support of this Motion are contained in the Memorandum of Law incorporated herein.

WHEREFORE, Defendant respectfully requests this Court to enter an Order granting its Motion for Summary Judgment and ordering the Clerk to enter judgment in its favor.

<u>MEMORANDUM OF LAW</u>

## I. STATEMENT OF MATERIAL FACTS[1]

### A.     General Background

Defendant, City of Sanford, Florida (the City) is a municipality operating under the Municipal Home Rule Powers Act, codified at FLA. STAT. Ch. 166. Consistent with the powers conferred by the Act, the City adopted its present

---

[1] Throughout Defendant's Statement of Material Facts, reference will be made to declarations, deposition transcripts, and documents relevant to the issues presented by Defendant's Motion for Summary Judgment. The declarations, deposition transcripts and their attached exhibits have been filed with the Court. All remaining summary judgment evidence cited herein was authenticated by declaration, deponents while testifying or is self-authenticating pursuant to FED. R. EVID. 902(2) and exempted from the hearsay rule by FED. R. EVID. 803(6) and (8). Defendant's Statement of Facts also contains citations to Florida Statutes, the City's Charter, and City Ordinances. The statutes, Charter and ordinances identify, as a factual matter, the source and scope of the City's authority to transact the executive acts relevant to the present dispute. This Court may exercise judicial notice of such enactments. FED. R. EVID. 201(b)(2).

governing Charter which created a fire department operating under the authority of an appointed Fire Chief. Charter of the City of Sanford, Florida, art. IV, § 4.01(d). All firefighters employed by the department are automatically enrolled in the City of Sanford Firefighters' Retirement System. Sanford City Code, Ch 66, art. III, §§ 66-71(1) (definition of the retirement system); 66-72 (automatic membership). The retirement system provides different benefits to its members depending on the nature of their retirement; i.e., whether they seek benefits pursuant to "normal retirement," "early retirement," death prior to retirement, or disability. Sanford City Code, Ch 66, art. III, § 66-76(a-d). Plaintiff does not challenge the legality of the retirement system's classifications.

The City hired Plaintiff, Karen D. Stanley (Stanley), on February 8, 1999.[2] [Ex. 1; Pl. Depo., p. 8:7 – 12]. At that time, Stanley was assigned to the Fire Department in the position of Firefighter/EMT/Engineer. [Ex. 1]. On April 28, 2000, Stanley was reclassified to Firefighter/Paramedic and on July 30, 2005, she was promoted to Fire Lieutenant. [Exs. 2 & 3; *see also*, Pl. Depo., p. 9:4 - 8]. Stanley served out the remainder of career in that capacity. [Pl. Depo., p. 9:9 – 11].

On January 18, 2016, Stanley was diagnosed with Parkinson's Disease. [Ex. 4; Pl. Depo., p. 22:20 – p. 23:7 (authentication)]. She did not disclose her condition

---

[2] Page and line designations to Stanley's deposition transcript will be cited as "Pl. Depo., p. __:__." At the time of her hire, Stanley's sur name was Matthews; her name changed to Stanley in 2004. [Pl. Depo., p. 8:13 – 22].

to anyone in her chain of command and did not know whether anyone in her chain of command knew of her condition. [Pl. Depo., p. 29:15 – 25]. Moreover, Stanley never experienced negative, hostile or antagonistic comments or conduct by any City employee because of her disease. [Pl. Depo., p. 30:1 – p. 31:9].

On August 7, 2018, Stanley applied for disability retirement because Parkinson's Disease prevented her from meeting the physical requirements of the position of firefighter. [Ex. 4; Pl. Depo., p. 24:10 – 18].[3] On November 1, 2018, the Board of Trustees of the City of Sanford Firefighters' Retirement System ordered that Stanley be awarded disability retirement benefits effective on the date of the order. [Ex. 5; Pl. Depo., p. 32:16 – 25].

### B. The Evolution and Adoption of the Disputed Policy

#### 1.   *The Policy Prior to October 1, 2003*

From the date Stanley was hired until October 1, 2003, the City provided its regular full-time employees with City paid health insurance. [Ex. 6, § 2.45(A); Fosson Dec. ¶ 4 (authentication)]. Under that policy, employees hired prior to October 1, 2002, and who completed twenty-five (25) years of service with the City were entitled to continue receiving City paid health insurance with the same coverage as they enjoyed while engaged in active employment. [Ex. 6, § 2.45(C -

---

[3] However, Stanley's disability did not prevent her from working in other capacities. [Pl. Depo., p. 24:19 – 23]. In fact, after retiring from the City, Stanley has continued to work at Orange Technical College in a part-time position. [Pl. Depo., p. 27:19 – p. 28:21].

D)]. This benefit ceased once an employee reached sixty-five (65) years of age. [Ex. 6, § 2.45(G)]. Employees who were employed after October 1, 2002, were not entitled to this benefit. [Ex. 6, § 2.45(C)].

In addition, employees who retired upon meeting the criteria for disability retirement prescribed by the Fire Pension Plan were also eligible to continue receiving City paid health insurance with the same coverage as they enjoyed while engaged in active employment. [Ex. 6, § 2.45(F)]. This benefit was not conditioned upon an employee's date of hire. As with retirement after twenty-five years of service, the benefit for disability retirement ceased once an employee reached sixty-five (65) years of age. [Ex. 6, § 2.45(G)].

Employees who retired under any other circumstance were not entitled to City paid health insurance following their retirement. [*See gen.*, Ex. 6, § 2.45 (omitting such provision)].

2.     *The Policy Post October 1, 2003.*

Beginning in July 2002, the City Commission began reviewing its health insurance options and considered how to contain costs during several budget work sessions and regularly scheduled commission meetings. During a work session on July 8, 2002, the Commission heard briefing on "health insurance options … and cost containment options." [Ex. 7; Fosson Dec. ¶ 5 (authentication)]. The Commission concurred, among other things, "to consider a

… plan … subsidizing rates for … retirees, mitigating retiree benefits … and not dramatically changing the benefit structure." [Ex. 7]. The following year, the Commission considered additional cost containment options. During a July 14, 2003, work session, the Commission considered three separate cost cutting features. [Ex. 8, p. 2; Fosson Dec. ¶ 6 (authentication)]. First, the Commission considered requiring retirees receiving City paid health insurance to pay any additional costs of the insurance which resulted from the retiree moving out of the City's coverage area. [Ex. 8, p. 2]. Second, the Commission considered applying a credit toward its contribution to health insurance payments from retirees who received health insurance subsidies from the Florida Retirement System (FRS). [Ex. 8]. Finally, the Commission considered limiting City paid health insurance to disability retirees who received Medicare benefits or after the expiration of twenty-four (24) months following disability retirement. *Id.*

The three cost cutting measures considered during the Commission work sessions were drafted into Ordinance No. 3806 which was first read during the Commission's regularly scheduled September 8, 2003, meeting. [Ex. 9, Fosson Dec. ¶ 7 (authentication)]. Ordinance 3806 defined its purpose as "continuing the City's Health Care Cost Containment Initiatives" and was adopted by a unanimous Commission on September 22, 2003. [Ex. 10 (capitalization altered);

Fosson Dec. ¶ 8 (authentication)]. For the remaining fifteen years of Stanley's employment, the relevant provisions of the health insurance policy provided:

2.45    Health Insurance

(A)    On the first day of the month after completing thirty (30) calendar days of service with the City of Sanford, regular full-time and regular part-time employees are provided with City paid health insurance benefit. The benefit is in the form of a payment contribution.

<div align="center">***</div>

… the City pays the employee portion of health insurance … equal to the … portion of the employee's premium.

<div align="center">***</div>

Employees desiring insurance coverage for their dependents, under the City's plan, may obtain such dependent coverage at their own expense.

(C)    An employee, if hired before October 1, 2002, will have met the criteria for eligibility for continuation of City-Paid health insurance at the time of retirement upon completion of twenty-five (25) years' service to the City.

(D)    This policy will result in the entitlement of retiring employees to the same health insurance coverage as is afforded regular employees and the total premium charged to retiring employees will not exceed the total premium charged to the active employee. The application of the said policy will also result in all employees and retirees receiving health insurance benefits receiving the same benefit regardless of the health service area in which the employee or retiree resides.

(F)    Employees retiring for <u>disability</u> reasons <u>and</u> … who meet the criteria for disability retirement as prescribed by the … Fire Pension Plan are eligible for continued <u>City-Paid</u> health insurance. Effective October 1, 2003, with regard to all employees retiring as a result of full disability and meet the criteria for disability retirement, City-Paid health insurance will begin upon retirement and will continue until the disabled retiree receives Medicare benefits or until 24 months have elapsed from the date of retirement, whichever comes first.

<div align="center">***</div>

The retiring employee approved for disability reasons will be entitled to the same health insurance coverage as is afforded regular (sic) and the total premium will not exceed the total premium charged to the active group.

(G)   Upon attainment of age sixty-five (65) all entitlement to <u>City-Paid</u> health insurance will <u>cease</u>.

[Ex. 11, § 2.45 (A) – (F) (emphasis in original)].

### C.   Application of the Disputed Policy to Stanley's Retirement

During Stanley's last twelve months of employment, she was enrolled in the City's health insurance plan. [Pl. Depo., p. 18:2 – 10]. Her elected benefits included "employee plus spouse." [Pl. Depo., p. 18:11 – 16].[4] Pursuant to these elections and consistent with Policy 2.45, the City and Stanley contributed to the cost of her and her dependent-husband's health care insurance. [Fosson Dec., ¶ 9]. Although these amounts were subject to fluctuation, generally the City contributed One Thousand, Fifty-Nine and no/100 dollars ($ 1,059.00) toward the total cost of Stanley's insurance coverage and deducted approximately Three Hundred and no/100 dollars ($ 300.00) from Stanley's payroll check representing her contribution to the cost of the insurance coverage. [Fosson Dec., ¶ 9].

---

[4] During this same time period, Stanley's husband worked for Central Florida Regional Hospital as a registered nurse (R.N.). [Pl. Depo., p. 19:2 – 12]. Stanley denied knowledge of whether her husband had applied for health care insurance coverage through his employer. [Pl. Depo., p. 19:21 – 25]. Moreover, she denied any knowledge as to the nature of her husband's employer's health care coverage. [Pl. Depo., p. 20:7 – 16]. However, she testified that she and her husband elected to remain on the City's health care plan as opposed to applying under her husband's employer's plan because it provided the care and treatment she needed and was affordable. [Pl. Depo., p. 19:25 – p. 20:6].

From the date of Stanley's disability retirement through the ensuing 24 months, the City continued to make its contribution toward the cost of Ms. Stanley and her dependent's health insurance coverage. [Fosson Dec., ¶ 11; Pl. Depo., p. 35:11 – p. 36:7].  During the same time period, Stanley authorized the City to deduct $ 300.00 from her pension benefit to pay for her contribution to the cost of her health insurance. [Pl. Depo., p. 36:18 – p. 37:13; Ex. 12 (authorization); Pl. Depo., p. 33:18 – p. 34:8 (authentication); Fosson Dec., ¶ 11] Stanley cannot identify any active employee who elected the same coverage but enjoyed better benefits or was charged less for the costs of health insurance. [Pl. Depo., p. 36:8 – 15].

On September 28, 2020, the City notified Stanley that twenty-four months had elapsed since the date of her retirement. [Ex. 13; Pl. Depo., p. 38:22 – p. 39:10 (authentication)]. The notice made clear that Stanley could elect to continue to remain on the City's health insurance plan, but that the City would cease contributing toward the costs of the coverage. [Ex. 13]. Consistently, the City advised Stanley that she was responsible for both, the employee's portion of the insurance and the dependent coverage totaling One Thousand, Three Hundred Fifty-Nine and no/100 dollars ($ 1,359.00). *Id.* Stanley, elected to have the entire amount deducted from her pension benefit. [Fosson Dec. ¶ 12; Ex. 13; Pl. Depo., p. 41:12 – 22].  Under these facts, the City is entitled to judgment.

## II. DISCUSSION[5]

### A.     Count IV Alleging Entitlement to Declaratory Relief

Count IV seeks the Court's declaration that City Policy 2.45 providing health insurance benefits to its employees and retirees violates FLA. STAT. § 112.0801. [Complaint, ¶¶ 42 – 52]. This Court's power to render declaratory judgment is conferred by 28 U.S.C. §2201 (a) which in relevant part provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The statute's use of the phrase *may declare* "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants", it does not require that they do so. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (internal quotations marks omitted); *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) ("The Declaratory Judgment Act is an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant ... [and which] gives the federal courts competence to make a declaration of rights ... [but] does not impose a duty to do so.") (internal quotation marks and citations to authority omitted). Further, the operation of § 2201 is procedural only. *Skelly*

---

[5] The City adopts the standard of review as articulated by this Court in *Little v. Cheatham*, 2020 WL 7039959, *2 - *3 (M.D. Fla. 2020) (Berger, J.).

*Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).   If a Court chooses to apply the remedy, it should apply federal law to its procedural aspects and state law to the underlying substantive claims. *See gen.*, *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-27 (1996) (discussed in the context of diversity jurisdiction as opposed to a court's exercise of supplemental jurisdiction); *Esfeld v. Costa Crociere*, 289 F.3d 1300, 1306 (11th Cir. 2002) (same).

Here, the Complaint alleges that the disputed policy distinguishes between the insurance benefits provided to retirees after twenty-five years of service and retirees who qualify under disability retirement. The Complaint concludes that such unequal treatment violates FLA. STAT. § 112.0801.  In relevant part, the statute provides:

> Any … municipality … that provides life, health, accident, hospitalization, or annuity insurance, … for its officers and employees and their dependents upon a group insurance plan or self-insurance plan shall allow all former personnel who retired before October 1, 1987, as well as those who retire on or after such date, and their eligible dependents, the option of continuing to participate in the group insurance plan or self-insurance plan. Retirees and their eligible dependents shall be offered the same health and hospitalization insurance coverage as is offered to active employees at a premium cost of no more than the premium cost applicable to active employees. For retired employees and their eligible dependents, the cost of continued participation may be paid by the employer or by the retired employees.
>
> ***
>
> For purposes of this section, "retiree" means any officer or employee who retires under a state retirement system or a state optional annuity or retirement program or is placed on disability retirement and who begins receiving retirement benefits immediately after retirement from employment.

FLA. STAT. § 112.0801 (1) – (2). The plain language of the statute imposes two separate obligations on the City. First, the City must allow all former personnel who have retired the option of continuing to participate in the City's group insurance plan or self-insurance plan. The undisputed facts reveal that the City, in fact, offered Stanley the option of remaining enrolled in its health care plan from the date of her retirement to the present time. Second, the statute obligates the City to provide its retirees and their eligible dependents the same health and hospitalization insurance coverage as is offered to active employees at a premium cost of no more than the premium cost applicable to active employees. Again, Stanley either admits or cannot dispute that she has received the same coverage at the same cost as active employees.  Therefore, the City has complied with both obligations imposed by the statute.

Contrary to the Complaint's allegations, the plain language of the statute does not prohibit the City from exercising its discretion to pay for, or to decline to pay for its retirees' insurance coverage. The statute merely states in permissive language "the cost of continued participation *may* be paid by the employer or by the retired employees." FLA. STAT. § 112.0801(1) (emphases added). Further, this provision's statutory history indicates a legislative intent that the City determine whether to bear the cost of its retirees' health coverage. As originally drafted, the statute required the retired employee to pay all such costs. 1976 Fla. Laws ch. 76-

151, § 2 ("Every … municipality … is hereby authorized to allow retired former personnel the option of continuing to participate in such group insurance plans, provided that the cost of any such continued participation in any such group insurance plan shall be entirely paid for by the retired employee."). In 1980, the statute was amended to permit "a municipality … [to] pay all or a portion of the cost of any such continued participation if so desires." 1980 Fla. Laws ch. 80-304, § 1. The current iteration of the provision was enacted in 1983. 1983 Fla. Laws ch. 83-294, § 1. These developments suggest a legislative intent to permit municipalities discretion to determine whether to pay for a portion or all of its retirees' insurance benefits.

Nonetheless, the Complaint alleges that once the City determined to pay for <u>any</u> of its retirees' insurance, the statute required the City to pay for <u>all</u> of its retirees' insurance to the same degree. [Complaint, ¶ 45]. The Complaint identified two bases to support such conclusion. First, the Complaint notes that the word "retiree" is defined to include persons who are "placed on disability retirement." [Complaint, ¶ 45; *see also*, FLA. STAT. § 112.0801 (2)]. Presumably, the Plaintiff contends that the phrase – "the cost of continued participation may be paid by the employer or by the retired employees" – prohibits a municipality from distinguishing among retired persons. However, nothing in the statutory

language compels that conclusion and there are many reasons why the Court should not construe the statute as the Complaint suggests.

First, such construction would prohibit the City from incentivizing long-term employment by promising to pay the health insurance costs for employees who remain employed for twenty-five years. Instead, the City would <u>either</u> have to decline from paying all retirees' insurance <u>or</u> provide the same benefits to persons who retire after vesting in the program – whether that length of employment was twenty, fifteen or ten years. In short, nothing in the statute prohibits municipalities from rewarding employee loyalty.

Secondly, such construction of the statute would prevent the City from engaging in cost containment efforts, even when such efforts were designed to prevent a windfall to the retiree at the City's expense. For example, the City could not incentivize retirees to substitute Medicare health insurance coverage at age sixty-five by discontinuing to provide City paid health insurance. Such cost containment measures would be impermissible under the Complaint's "either/or" interpretation of the statute.

Finally, the Complaint's interpretation of the statute would prohibit the City from exercising compassionate discretion. For example, the City would <u>either</u> have to decline from paying all retirees' insurance <u>or</u> provide the same benefits to persons who retired due to illness or injury as those who retired after

ten years of employment but remained employable. Municipalities possess obvious legitimate motivations for providing persons with disabilities two years of paid benefits while denying the same to employable persons. However, municipalities would be prohibited from acting on those motivations under the Complaint's "either/or" interpretation of the statute. Given the fact that the statute does not expressly prohibit the City from distinguishing between classifications of retirees and given the legitimate reasons for permitting such classifications, the City is confident it has complied with FLA. STAT. § 112.0801.

The Complaint also basis its interpretation of the statute on language quoted from Florida Attorney General Opinion 91-43 [AGO 91-43]. [Complaint, ¶ 46]. However, the Complaint does not allege a rational to support its theory that AGO 91-43 supports its interpretation. A review of AGO 91-43 will demonstrate it is inapposite to the Complaint's interpretation of the statute.

First, AGO 91-43 addressed the question of whether the statute "applies to all employees of the [municipality][6] who have left the employ of the [municipality] for whatever reason or only to those employees who retire." AGO 91-43, p. * 1. Therefore, the issue under consideration concerned the distinction between retirees and persons who were separated from employment for reasons

---

[6] The governmental entity seeking advice from the AGO was South Broward Drainage District. AGO 91-43, p. *1. However, the statute applies to both, municipalities and special districts. FLA. STAT. § 112.0801(1).

other than retirement. The opinion concluded that the statute only applied to persons who retired – it was not applicable to persons who were "eligible for retirement" but were separated from employment for reasons other than retirement. AGO 91-43, p. * 2.

After determining the statute did not apply to persons who left employment for reasons other than retirement, the opinion concluded by addressing those to whom the statute _did_ apply. In that context, that Attorney General opined:

> In using the terms "retire," "retired," and "retirees," however, the statute does not distinguish between those who retire under normal retirement or those who have retired under the early retirement or disability retirement provisions of a public agency's retirement system. In the absence of the statute providing for or recognizing such distinctions, this office cannot read into the statute such distinctions or qualifiers.

AGO 91-43, p. * 2. The sole intent of this language is to conclude that the statute applies to all retirees, regardless of the type of retirement the employee elects. It makes no reference to – nor does it imply – that the statute prohibits a governmental entity from using its discretion with respect to the payment of insurance premiums on behalf of retired persons. This is further confirmed by the opinion's final paragraph, which again, reiterated the question addressed:

> Therefore, I am of the opinion that s. 112.0801, F.S., requiring a special district to offer retired employees and their eligible dependents participation in its group insurance or self-insurance plan, does not apply to all former personnel of the district but only to former personnel who have retired under the district's retirement plan.

AGO 91-43, p. *2. In short, the Attorney General opinion is inapposite to the issue presented in Count IV. For all the forgoing reasons, this memorandum has demonstrated that Plaintiff is not entitled to the relief sought and Defendant is entitled to judgment as a matter of law with respect to Count IV alleging entitlement to declaratory relief.

### B.    Count VI Alleging Violation of Equal Protection

Count VI of the Complaint alleges the City violated the Equal Protection Clause guaranteed by U.S. CONST. amend. XIV § 1 and is brought pursuant to 42 U.S.C. § 1983. [Complaint, ¶¶ 58 – 61]. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations to authority omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* Count VI alleges that City Policy 2.45 providing health insurance benefits to its employees and retirees violates the Equal Protection Clause because it classifies disabled retirees differently from other retirees. [Complaint, ¶ 59].

The Equal Protection Clause provides in relevant part: "No state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. This provision "requires the government to treat similarly situated persons in a similar manner." *Leib v. Hillsborough County Public*

*Transportation Commission*, 558 F.3d 1301, 1305 (11th Cir. 2009). A threshold inquiry in such claims is to determine the level of scrutiny the Court should apply when reviewing a municipal ordinance. *See gen.*, *Leib*, 558 F.3d at 1306; *see also*, *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). "In the absence of any allegation that the government discriminated on the basis of a suspect classification, including race, alienage, national origin, gender, or illegitimacy, [courts] evaluate equal protection claims under rational basis review and ask only whether the challenged … ordinances are rationally related to the achievement of some legitimate government purpose." *Checker Cab Operators, Inc. v. Miami-Dade County*, 899 F.3d 908, 921 (11th Cir. 2018) (internal punctuation omitted); *see also*, *Haves*, 52 F.3d at 921 (adding "fundamental rights such as privacy and travel" to the list of suspect classifications). Here, the Complaint alleges that the improper classification is based on disability.[7]

The Supreme Court has previously held that one type of disability – retardation – does not constitute a suspect or quasi-suspect classification and therefore applied the rational-basis test. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985). The Court's holding was partly informed by the view that:

---

[7] The Complaint implied that the appropriate level of scrutiny is the rational-basis test. [Complaint, ¶ 60 ("There is no rational relationship between the classification and any legitimate governmental goal.")].

> where individuals in the group affected by a law have distinguishing
> characteristics relevant to interests the State has the authority to
> implement, the courts have been very reluctant, as they should be in
> our federal system and with our respect for the separation of powers,
> to closely scrutinize legislative choices as to whether, how, and to what
> extent those interests should be pursued.

*City of Cleburne*, 473 U.S. at 441 – 42. Here, the individuals affected by City Policy

2.45 are the group of retirees who are distinguished one from the other based

upon the type of retirement elected; i.e., normal retirement, early retirement, or

disability retirement. Plaintiff does not challenge the legality of these distinctions

created by the Fire Department's retirement system. As previously argued, the

City's interests in administering the cost of retirees' medical insurance include:

cost containment; the desire to incentivize and reward long-term employment;

and to express compassion for those who retire due to disability as opposed to

those who seek early retirement while still able to work. Similar to the Court's

reluctance to scrutinize the City of Cleburne's state interests, this Court should

likewise be reluctant to scrutinize the City's interest with respect to whether it

should fund health care during retirement and, if so, how and to what extent

such insurance should be funded. Therefore, the rational-basis test applies.

The rational basis test "is a paradigm of judicial restraint." *Federal

Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993).

It affords legislatively created classifications "a strong presumption of validity."

*Heller v. Doe*, 509 U.S. 312, 319 – 20 (1993). Consistently, "a classification must be

upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller*, 509 U.S. at 320; *F.C.C.*, 508 U.S. at 313 (same). Moreover, the City has no obligation to produce evidence to sustain the rationality of a classification – instead, it "may be based on rational speculation unsupported by evidence or empirical data." *Heller*, 509 U.S. at 320; *see also*, *F.C.C.*, 508 U.S. at 313 – 314 ("Where there are plausible reasons for [the government's] action, our inquiry is at an end.") (internal quotation marks omitted); *Leib*, 558 F.3d at 1306 (same); *Haves*, 52 F.3d at 922 (City does not have to articulate any reason for its actions, nor is it required to produce record evidence of a legitimate purpose). Finally, the burden is upon Plaintiff "to negate every conceivable basis that might support [the classification], even if that basis has no foundation in the record." *Leib*, 558 F.3d at 1306; *Heller*, 509 U.S. at 320 (same); *Checker Cab*, 899 F.3d at 921 (same); *Haves*, 532 F.3d at 922 (same). The City's rational for the classifications challenged in the present case easily meets these burdens.

First, the record demonstrates that the City desired to pay the health insurance costs of employees who retired due to disability until they reached sixty-five years of age. That was, in fact, the policy prior to calendar year 2003. However, beginning in July 2002, the City Commission began reviewing its health insurance payments in order to contain costs – that purpose was expressly

stated in several of the minutes reflecting the City Commission's actions. City budgetary issues involving tax revenues and expenditures for city services are a uniquely local government concern which locally elected city commissioners are best suited to determine. Therefore, such determinations should receive significant deference.

In July 2003 the Commission considered three separate cost cutting measures, only one of which involved limiting the City's insurance payments for retirees. The fact that additional cost cutting measures were considered, together with the lack of evidence of animus towards persons with disabilities demonstrates the that cost containment was, in fact, the City's intention.

Finally, as previously argued, numerous reasons exists for the classifications existing in Policy 2.45. Among these: to incentivize and reward long-term employment; cost containment efforts by ending all payments once retirees reach sixty-five years of age; exercising compassion for employees who retire early due to illness or injury as compared to those who retire early but remained employable. Each of these reasons are legitimate governmental considerations. Finally and obviously, the classifications created in Policy 2.45 are rationally related to the achievement of each goal. Therefore, Plaintiff cannot prevail on her claim of equal protection and the City is entitled to judgment as a matter of law.

III. CONCLUSION

This Memorandum of Law demonstrates that Plaintiff's Complaint fails to state a cause of action for which relief may be granted under the theories alleged. Therefore, Defendant respectfully requests this court to enter an Order granting Defendant's Motion for Summary Judgment, that Plaintiff takes nothing from this claim, and directing the Court to enter judgment in Defendant's favor and close the court's file on this matter.

I HEREBY CERTIFY that on August 3, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to Patricia Sigman, Esquire, Sigman & Sigman, P.A., 211 Maitland Avenue, Altamonte Springs, FL  32701; Martha A. Chapman, Esq., Martha A. Chapman, P.A., Post Office Box 536924, Orlando, FL  32853.

<div style="margin-left:40%">

*/s/ Douglas T. Noah*
DOUGLAS T. NOAH, ESQ.
Florida Bar No. 0863970
PATRICIA M. REGO CHAPMAN, ESQ.
Florida Bar No. 08539
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel:  407-422-4310  Fax:  407-648-0233
DNoah@drml-law.com
PChapman@drml-law.com
Attorneys for Defendant

</div>